UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA MILLS,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                     Case No. 1:06-CV-409

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age at the time of the ALJ's decision. (Tr. 13). She successfully completed high school, as well as one year of college, and worked previously as a waitress, security officer, landscaper, utility locator, and cable installer. (Tr. 13, 98, 115-21).

Plaintiff applied for benefits on January 16, 2004, alleging that she had been disabled since April 1, 2003, due to reflex sympathetic dystrophy, fibromyalgia, and osteoarthritis in her feet. (Tr. 62-64, 92). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 22-61). On October 5, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff, Plaintiff's son, Plaintiff's landlord, and vocational expert, Randall Nelson. (Tr. 353-416). In a written decision dated December 12, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 12-21). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

A CT scan of Plaintiff's left foot, performed on July 8, 2002, revealed "degenerative osteoarthritic changes." (Tr. 173). Plaintiff was subsequently diagnosed as suffering from left

3

calcaneonavicular coalition.[1] (Tr. 147). On January 22, 2003, Plaintiff underwent surgery to treat this condition. (Tr. 147-48). Specifically, the doctor performed a "resection calcaneal anterior process[2] and navicular[3] coalition." *Id.*

On March 5, 2003, Plaintiff was examined by Dr. Ronald Olm. (Tr. 166). Plaintiff reported that she was experiencing a "stabbing pain" on the outside aspect of her left foot which had increased in severity since undergoing surgery. Plaintiff reported that her pain medication was providing her with no relief. An examination of Plaintiff's foot revealed "exquisite tenderness" to palpation. Plaintiff reported that she was "just trying to get back to work." *Id.*

On March 25, 2003, Plaintiff was examined by Dr. Robert Mandell. (Tr. 160-61). Plaintiff reported that she was experiencing persistent pain and swelling in her left foot. *Id.* Plaintiff walked with a "modified" gait and experienced discomfort when she tried to "bear any weight on her left lower extremity." (Tr. 161). An examination of Plaintiff's left foot revealed "increased" warmth and rubor[4] and "significant" swelling. Plaintiff was also "quite sensitive to any palpation of the foot to light touch." Plaintiff rated her pain as 5 (on a scale of 1-10). *Id.* Dr. Mandell

---

[1] Calcaneonavicular coalition results from ossification which limits subtalar motion, which is required for normal walking. *See* Calcaneonavicular Coalition, available at http://www.wheelessonline.com/ortho/calcaneonavicular_coalition (last visited on May 10, 2007). As a result of this restriction of subtalar motion the navicular bone is displaced and the peroneal tendons contract and shorten. Limited subtalar motion and peroneal tendon shortening "contribute to rigid flatfoot." *Id.*

[2] The anterior process of the calcaneus is a saddle-shaped bony protuberance that articulates with the cuboid bone. *See* Foot Fractures Frequently Misdiagnosed as Ankle Sprains, American Family Physician, Vol. 66, No. 5 at 791. The anterior process of the calcaneus is attached to the cuboid bone by an interosseous ligament and to the cuboid and navicular bones by the bifurcate ligament. *Id.*

[3] The navicular bone is one of the seven small bones forming the back part of the foot. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* N-25 (Matthew Bender) (1996).

[4] Rubor refers to the redness which accompanies inflammation. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* R-199 (Matthew Bender) (1996).

concluded that Plaintiff was suffering from reflex sympathetic dystrophy.[5] (Tr. 162). The doctor recommended that Plaintiff begin treatment with a pain clinic. *Id.*

On March 31, 2003, Plaintiff was examined by Dr. A. Michael Derosayro. (Tr. 176-78). Plaintiff reported that she was experiencing pain, swelling, and tenderness in her left foot. (Tr. 176). She reported that she experiences "color changes" and "significant swelling" with walking and weightbearing. An examination of Plaintiff's foot revealed "significant" swelling and "extensive" pain on "gentle palpation." *Id.* Dr. Derosayro recommended that Plaintiff receive a sympathetic nerve block injection. (Tr. 176-77). Plaintiff agreed, but following this injection she continued to experience pain and pressure in her foot which the doctor concluded was "suggestive of neuropathic pain, but unfortunately, appears not to be sympathetically mediated." (Tr. 178). The doctor then prescribed Neurontin for Plaintiff. *Id.*

On April 16, 2003, Plaintiff was examined by Dr. Mandell. (Tr. 184). Plaintiff reported that she was experiencing less swelling in her left foot, but "no significant change in pain." The doctor instructed Plaintiff to "maintain her exercise efforts." *Id.*

On June 25, 2003, Plaintiff participated in an MRI examination of her left foot, the results of were "negative." (Tr. 290). The bone marrow appeared "normal without evidence of edema." The joint spaces were "well preserved" and there was no evidence of "abnormal cystic or solid soft tissue masses." *Id.*

---

[5] Reflex Sympathetic Dystrophy is a chronic neurological syndrome characterized by severe burning pain, pathological changes in bone and skin, excessive sweating, tissue swelling, and extreme sensitivity to touch. *See* What is RSD, *available at*, http://www.rsds.org/2/what_is_rsd_crps/index.html (last visited on May 10, 2007). There is no cure for this disorder which "gets worse rather than better over time." Complex Regional Pain Syndrome Information, *available at*, http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/reflex_sympathetic_dystrophy.htm (last visited on May 10, 2007).

On July 21, 2003, Plaintiff was examined by Dr. Girish Juneja. (Tr. 213-15). Plaintiff reported that she was experiencing constant stabbing, shooting, aching, and burning pain in her left foot. (Tr. 213). Plaintiff reported that her pain ranges from "moderate to severe." *Id.* An examination of Plaintiff's lower back revealed tenderness, as well as "discomfort" at the "extremes of the range of motion." (Tr. 214). An examination of Plaintiff's lower extremities revealed "normal" muscle strength and no evidence of radicular pain. An examination of Plaintiff's left foot revealed tenderness throughout, as well as paresthesia,[6] allodynia,[7] and hyperpathia.[8] The doctor also reported the presence of 12 of 18 fibromyalgia pressure points. Plaintiff walked with a normal gait and exhibited no evidence of neurological instability.

Dr. Juneja was unable to diagnose the left foot impairments from which Plaintiff was suffering, but nonetheless recommended to Plaintiff that she undergo a series of sympathetic nerve block injections. The doctor did, however, diagnose Plaintiff with fibromyalgia, depression, and mechanical dysfunction of the lumbar spine. *Id.*

Plaintiff received six sympathetic nerve block injections between July 29, 2003 and October 7, 2003. (Tr. 202-12). She "responded well" to these injections, but her pain nonetheless returned. (Tr. 200).

---

[6] Paresthesia refers to an abnormal sensation of tingling, burning, crawling, or tickling. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-57 (Matthew Bender) (1996).

[7] Allodynia refers to pain from stimuli which are not normally painful. *See* MedicineNet.com, *available at*, http://www.medterms.com/script/main/art.asp?articlekey=25197 (last visited on May 10, 2007).

[8] Hyperpathia refers to a condition in which the subject feels a more severe pain in response to a painful stimulus than would be the case with a normal person. The sensation of pain may persist after the stimulus is removed. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* H-154 (Matthew Bender) (1996).

On October 21, 2003, Plaintiff was examined by Dr. Richard Hodgman. (Tr. 190). Plaintiff reported that she was experiencing pain in her left heel which is "most pronounced when initiating any ambulation." An examination of Plaintiff's left foot revealed "mild swelling" and "significant pain" on palpation." X-rays of Plaintiff's foot revealed no evidence of "acute fractures." Plaintiff was diagnosed with plantar fasciitis and instructed to "wear a shoe with good arch support" and perform "gentle stretching exercises." *Id.*

On December 30, 2003, Plaintiff was examined by Dr. James Colson. (Tr. 194-96). Plaintiff reported that she was experiencing a constant stabbing pain in her left foot. (Tr. 194). She rated her pain as 5/10 generally and 10/10 after standing or walking for "a long period of time" or "when she twists her foot." Plaintiff also characterized her mood as "irritable and frustrated." *Id.* An examination of Plaintiff's foot revealed "areas of dysesthesia[9] and hyperesthesia[10] on the lateral aspect of her lower leg and especially around and below the left lateral malleolus." The doctor also observed "some trophic changes on the left foot." *Id.* Dr. Colson concluded that Plaintiff's foot pain "likely" had a neuropathic component. (Tr. 196).

On January 12, 2004, Plaintiff participated in a limited body bone scan, the results of which revealed "increased activity" in the lateral aspect of her left foot. (Tr. 287). The doctor concluded that Plaintiff was suffering from degenerative disease, trauma, and postoperative changes. The doctor further noted that "[t]he possibility of osteomyelitis cannot be excluded. *Id.*

---

[9] Dysesthesia refers to an impairment of one of the senses, especially the sense of touch. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* D-166 (Matthew Bender) (1996).

[10] Hyperesthesia refers to an excessive sensitivity of the sense of touch. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* H-147 (Matthew Bender) (1996).

X-rays of Plaintiff's left foot, taken on January 29, 2004, revealed no evidence of fracture or dislocation. (Tr. 286). There was also no evidence osteoblastic or osteolytic lesions. The examination did reveal the presence of a plantar calcaneal spur which "may be symptomatic." *Id.*

On February 17, 2004, Plaintiff was examined by Dr. Sudhir Rao. (Tr. 236-37). Plaintiff reported that she was experiencing pain in her left foot. (Tr. 236). Plaintiff reported that at rest her foot pain rated as 3/10, but increased to 8/10 with weight-bearing activity. An examination of Plaintiff's foot revealed "mild" swelling, but no evidence of trophic changes or temperature abnormality. Plaintiff's pedal and tibial pulses were "well felt" and the doctor observed no evidence of sensory abnormality. Plaintiff's ankle joint was "non-tender and [displayed] a full range of pain free motion." The subtalar joint in Plaintiff's left foot was also "non-tender" and moved without pain. An examination of the calcaneal cuboid joint and the medial aspect of the midtarsal joint revealed tenderness. *Id.*

Dr. Rao concluded that while Plaintiff "certainly appears to have a real problem [with her left] foot," it was unlikely that she suffered from "true" reflex sympathetic dystrophy. (Tr. 236). The doctor indicated that further medical tests were necessary to better identify the impairments from which she was suffering. *Id.*

On March 19, 2004, Plaintiff participated in a CT scan of her left foot, the results of which revealed "arthritic changes in the calcaneal cuboid joint." (Tr. 234). Dr. Rao concluded that Plaintiff did not suffer from reflex sympathetic dystrophy, but instead was experiencing difficulty with the calcaneal cuboid joint in her left foot. (Tr. 233). Because Plaintiff had not responded well to conservative treatment, the doctor recommended to Plaintiff that she undergo additional surgery.

8

*Id.* Plaintiff agreed and on March 29, 2004, Dr. Rao performed an arthrodesis[11] of the calcaneal cuboid joint in Plaintiff's left foot. (Tr. 219).

X-rays of Plaintiff's left foot, taken on March 31, 2004, revealed "evidence of calcaneal arthrodesis with plate fixation." (Tr. 235). The doctor concluded that the "overall appearance" of Plaintiff's foot was "satisfactory." *Id.* X-rays taken on April 9, 2004, revealed similar results. *Id.*

On April 27, 2004, Plaintiff reported to the emergency room complaining of severe pain in her left lower extremity. (Tr. 225-26). An examination revealed that she was suffering from deep vein thrombosis. Plaintiff was discharged from the hospital on April 30, 2004, in stable condition. *Id.*

On August 13, 2004, Dr. Robert Huttinga, who had treated Plaintiff since October 1997, concluded that "due to her significant left foot problem, [Plaintiff] is unable to work, and at this time is considered totally disabled." (Tr. 282-83).

On July 11, 2005, Plaintiff was examined by Dr. Juneja. (Tr. 319-20). Plaintiff reported that she was again experiencing pain in her left foot. (Tr. 319). The doctor administered a sympathetic nerve block injection. (Tr. 319-20). Plaintiff received another such injection on July 18, 2005. (Tr. 316-18).

In a letter dated October 10, 2005, Dr. Raymond Tracy reported that Plaintiff "can not work at this time" and "needs MUCH more medical investigation and treatment before she would even come close to being able to work at any job." (Tr. 291). Dr. Tracy observed that

---

[11] Arthrodesis refers to the surgical procedure of making a joint immovable by causing the surfaces of the bones to fuse or grow together. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* A-388 (Matthew Bender) (1996).

Plaintiff "wants to work" and had been trying to have "garage sales and flea markets to raise money to pay her rent." However, "with her medical condition deteriorating even more she can not even do that." The doctor characterized Plaintiff's prognosis as "poor." *Id.*

At the administrative hearing, Plaintiff testified that she can stand or walk for 15-20 minutes, but that after doing so she must sit down and prop up her feet. (Tr. 373-74). She testified that being on her feet for that period of time causes her to experience pain and swelling in her left foot. *Id.* Plaintiff reported that her friends and her son have been doing her grocery shopping for her. (Tr. 375-76). Plaintiff testified that she recently attempted to conduct a garage sale to raise money, but that she had to cancel because of her inability to stand or move around. (Tr. 377-79). Plaintiff reported that she daily experiences stabbing pain in her left foot. (Tr. 379-80). She also reported that she experiences incontinence daily. (Tr. 372, 381-82).

Suzanne Cornwell, Plaintiff's landlord, testified that when she met Plaintiff four years previously Plaintiff was "energetic," "ambitious," and "like[d] to work." (Tr. 390-91, 394). Cornwell further testified, however, that Plaintiff is no longer able to spend any time on her feet because doing so causes her feet to swell and turn "black." (Tr. 392-93). Cornwell testified that she has witnessed this occurrence several times. (Tr. 392). Cornwell further reported that she has witnessed instances in which Plaintiff was unable to even walk to the door of her residence to let her enter. *Id.* Cornwell also testified that she had witnessed a gradual decline in Plaintiff's cognitive abilities resulting from her physical impairments. (Tr. 394-95).

William Mills, Plaintiff's son, testified that Plaintiff's ability to function has deteriorated over time. (Tr. 396-400). Mills reported that because of his mother's inability to function he performs her yard work, cares for her dogs, and assists her with various other household

tasks. Mills also testified that Plaintiff's left foot is "usually always swollen" and turns "really, really dark black." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[12] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) status post resection of the left calconeal process; (2) obesity; and (3) affective disorder. (Tr. 13).

---

[12] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 18-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift 20 pounds occasionally and 10 pounds frequently; (2) she can stand and/or walk at least two

hours during an 8-hour workday; (3) she can sit for "about" six hours during an 8-hour workday; (4) she cannot perform constant pushing or pulling activities with her lower extremities; (5) she cannot perform constant walking or standing; (6) she cannot climb ropes, ladders, or scaffolds; (7) she can only occasionally climb ramps or stairs; (8) she can only occasionally balance, stoop, kneel, crouch, or crawl; (9) she must avoid concentrated exposure to hazards such as machinery or unprotected heights; and (10) she can perform only simple routine tasks. (Tr. 18).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, moderate difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence or pace, and "has not had repeated episodes of decompensation, each of extended duration." (Tr. 14).

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can

perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Randall Nelson.

The vocational expert testified that there existed approximately 7,500 jobs (as office helpers and cashiers) which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 412-13). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). Accordingly, the ALJ concluded that Plaintiff was not disabled.

        a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

The record clearly establishes that Plaintiff suffers from serious impairments to her left foot. Conservative treatment proved ineffective in treating such. Accordingly, Plaintiff twice

underwent foot surgery. Despite such aggressive treatment, Plaintiff's ability to function has not improved. This conclusion is supported by the statements of Plaintiff's care providers as well as the uncontradicted observations of individuals who interact with Plaintiff on a regular basis. The record contains no evidence calling into question Plaintiff's assertion that her ability to function has not improved with treatment and, in fact, has significantly deteriorated.

       The medical evidence certainly reveals that Plaintiff suffers from impairments which can reasonably be expected to produce the pain and limitations from which she alleged suffers. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). Nonetheless, the ALJ rejected Plaintiff's subjective allegations stating that

> While the undersigned does not doubt that the claimant experiences some pain, her statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, and the medical history, the findings made on examination.

(Tr. 18).

       The ALJ's conclusion in this regard is not supported by substantial evidence. Plaintiff's "description of her activities and life style" is entirely consistent with her subjective allegations of pain and disability. The Court is puzzled by the ALJ's assertion that the "degree of medical treatment" Plaintiff required somehow contradicts her subjective allegations of pain and limitation. The record clearly reveals that conservative treatment was unsuccessful. As a result Plaintiff underwent two surgical procedures, the efficacy of which is not demonstrated by the

medical evidence. Furthermore, contrary to the ALJ's determination, the observations and conclusions of Plaintiff's care providers actually *support* Plaintiff's subjective allegations.

The ALJ observed no behavior contradicting Plaintiff's allegations, nor have any of Plaintiff's care providers called into question the veracity of Plaintiff's subjective allegations. *See Felisky v. Bowen*, 35 F.3d 1027, 1040-41 (6th Cir. 1994) (substantial evidence did not exist to support the ALJ's decision to discredit the claimant's testimony where the claimant's testimony was consistent with information provided to her physicians, none of whom expressed doubts regarding her symptoms or indicated that she exaggerated her pain). While the ALJ has arguably identified evidence supporting his position, Plaintiff is not required to establish the absence of any and all factors adverse to her position. *Id.* at 1041 (it is not necessary that every single factor favor the claimant before finding that the ALJ's decision is not supported by substantial evidence).

Simply put, the evidence fails to support the ALJ's RFC determination. Accordingly, for the reasons herein discussed, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence.

As indicated above, the vocational expert testified that there existed a significant number of jobs which Plaintiff can perform consistent with her RFC. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that there exists a significant number of jobs which Plaintiff can perform despite her limitations, is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while

the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

### b. Evidence of Plaintiff's disability is compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). As discussed above, the medical evidence reveals that Plaintiff suffers from impairments which can reasonably be expected to impair her to the extent alleged. Moreover, the medical evidence is consistent with Plaintiff's subjective allegations. In sum, for the reasons discussed herein, the Court concludes that the evidence of Plaintiff's disability is compelling.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  May 31, 2007                                        /s/ Ellen S. Carmody
                                                                     ELLEN S. CARMODY
                                                                      United States Magistrate Judge